OPINION OF THE COURT
Megan Tallmer, J.
Defendant originally was charged with the class B felony of criminal sale of a controlled substance in the third degree (Penal Law §220.39 [1]) and the class A misdemeanor of criminal possession of a hypodermic instrument (Penal Law § 220.45). The complaint alleges that an undercover police officer purchased a glassine of heroin from defendant and that nine hypodermic needles were recovered from defendant’s waistband. When a laboratory analysis of the glassine sold to the undercover showed no controlled substance, the felony charge was dismissed on the District Attorney’s application, leaving only the misdemeanor charge of criminal possession of a hypodermic instrument. Defendant now moves to dismiss this count on the ground that there exists a legal impediment to defendant’s conviction (CPL 170.30 [1] [f]). The basis for defendant’s motion is that the Department of Health’s regulations establishing needle exchange programs create an exception to the Penal Law’s ban on the possession of hypodermic needles for participants in such a program.
Counsel’s affirmation in support of defendant’s motion asserts that defendant is a participant in the Lower East Side Needle Exchange Program (the Program), which is authorized by the Department of Health to distribute hypodermic needles. At the time of his arrest, defendant was carrying a card identifying him as a participant in the program. A copy of this card is annexed to defendant’s moving papers as exhibit F. Although all hypodermic needles issued by the Program are marked with blue paint, defendant acknowledges that the needles seized from him at the time of his arrest were not so marked. In an affidavit in support of defendant’s motion, Allan Clear, Director of the Program, states that ”[i]n accordance with the rules and regulations of New York State governing needle exchange * * * the [Program] accepts any needle from participants in exchange for the blue-marked needles provided by the Program.”
In their response to defendant’s motion, the People assert *590 that defendant was arrested selling fake drugs to an undercover officer and was found to be in possession of nine new hypodermic syringes in their original packaging. The People further allege that none of the hypodermic syringes recovered from defendant bore markings from any authorized needle exchange program.
Section 220.45 of the Penal Law provides that "[a] person is guilty of criminally possessing a hypodermic instrument when he knowingly and unlawfully possesses or sells a hypodermic syringe or hypodermic needle.” The circumstances under which a person lawfully may possess a hypodermic needle are set forth in section 3381 of the Public Health Law, which provides, inter alia, that it shall be unlawful for any person to obtain or possess a hypodermic needle unless such possession has been authorized by the New York State Commissioner of Health. The Public Health Law authorizes the Commissioner to regulate classes of persons who may obtain hypodermic needles without prescription and the manner in which such transactions may take place (Public Health Law § 3381 [4]).
In May of this year, the New York State Department of Health responded to the alarming spread of the AIDS epidemic by adopting regulations authorizing a needle exchange program (10 NYCRR 80.135 [hereinafter referred to as the Regulations]). The adoption of these Regulations no doubt was spurred by Judge Drager’s comprehensive decision in People v Bordowitz (155 Misc 2d 128 [Crim Ct, NY County 1991]), acknowledging the benefits of a needle exchange program and accepting a justification defense to a charge of violating section 220.45 of the Penal Law.
Subdivision (a) of 10 NYCRR 80.135 sets forth the persons authorized to obtain, possess and furnish hypodermic needles "in connection with the distribution or collection of hypodermic * * * needles for the purpose of preventing the transmission of human immunodeficiency virus in users of injectable drugs.” It states that authorization to provide hypodermic needles shall be granted only in accordance with a plan approved by the Commissioner of the Department of Health, meeting the requirements of the Regulations. Subdivision (e) of 10 NYCRR 80.135 requires all hypodermic needles provided pursuant to an approved plan to bear an identifying mark "such that it can be linked to an organization or entity authorized * * * to engage in hypodermic * * * needle exchange.”
*591 In support of his motion, defendant relies upon the language of subdivision (c) (1) of 10 NYCRR 80.135, which provides:
"(c) Individuals participating in the approved plan may obtain and possess hypodermic syringes and hypodermic needles without prescription from individuals authorized pursuant to subdivision (a) of this section provided that:
"(1) this authorization extends only to obtaining or possessing those hypodermic syringes and hypodermic needles which have been distributed or collected pursuant to the approved plan.”
Defendant argues that because the Program is permitted to collect unmarked needles, the reference to collected needles in paragraph (1) of 10 NYCRR 80.135 (c) must be read as authorizing program participants to possess unmarked needles as well.
The court finds it unnecessary to determine whether the construction of paragraph (1) urged by defendant is correct.* Assuming, for the sake of argument, that section 80.135 (c) (1) permits participants to possess used unmarked needles intended to be exchanged for clean marked needles, this section cannot be read to authorize the possession of new unmarked needles under circumstances negating any inference that defendant planned to exchange such needles for clean marked ones.
Various provisions of the Regulations make clear that under a needle exchange program, used needles are to be exchanged for clean needles. (See, 10 NYCRR 80.135 [f] [3] [needle exchange program must keep records as to type, size and number of used hypodermic needles returned by participants]; 80.135 [k] [3] [organizations submitting needle exchange plans *592 for approval must detail procedures by which clean needles will be furnished in exchange for used needles]; 80.135 [k] [4] [proposed needle exchange plan must include plant for disposing of used needles].) This regulatory scheme is consistent with the objective of reducing the transmission of the HIV virus through the sharing of used needles. That needle exchange programs are intended to permit the exchange of used needles also is reflected in the card issued by the Program, which states that participants can exchange used needles for clean ones.
Defendant here does not dispute the People’s contention that the nine hypodermic needles he is charged with possessing were new needles in their original packaging. Nor does defendant take issue with the People’s assertion that he was in possession of these needles at the time he was engaged in the sale of fake heroin to an undercover officer. These facts conclusively refute any claim that defendant’s possession of the needles was incidental to their being exchanged through the Program. (Cf., 10 NYCRR 80.135 [c] [3] [authorization to possess needles shall be automatically void with respect to any needle which is sold or attempted to be sold by a participant to any other person].) Under these circumstances, defendant is not entitled to invoke whatever exemption from prosecution section 80.135 (c) (1) may provide to participants who are in possession of used needles intended to be exchanged for clean ones. Defendant’s motion to dismiss pursuant to CPL 170.30 (1) (f) accordingly is denied.
Defendant also has moved to dismiss the information in the interests of justice. After weighing all of the factors set forth in CPL 170.40 (1), this motion is denied. Defendant is a predicate felon with a pending parole hold. He also has three misdemeanor convictions. Although the offense charged is simple possession of hypodermic needles, unlawful possession of hypodermic needles is associated with illegal drug use, which claims many victims. As discussed earlier, defendant’s reliance upon the Regulations to immunize his conduct is misplaced. The objective of allowing addicts to exchange used needles for clean ones would not be enhanced by permitting a defendant charged with possessing nine new hypodermic needles while engaged in a sale of fake heroin to an undercover officer to escape criminal liability. Such a ruling could only serve to undermine public confidence in needle exchange programs.
Defendant’s application for a Sandoval hearing is referred *593 to the Trial Judge. A Mapp/Dunaway hearing is ordered. A Huntley hearing is denied as unnecessary since the People do not intend to offer on their direct case any statement made by defendant. A Wade hearing is denied based on the People’s allegation that the identification was a confirmatory identification by the undercover officer made five minutes after the arrest.

 The court considers this construction to be problematic, since paragraph (1) is subject to subdivision (c) of section 80.135, which provides that participants in needle exchange programs may obtain needles from individuals authorized pursuant to subdivision (a). Subdivision (a) grants authorization to distribute or collect needles only in accordance with plans meeting the requirements of section 80.135. Subdivision (e) of section 80.135 mandates that all needles distributed by a plan be marked. When considered together, these provisions would appear to limit a participant’s right to possess hypodermic needles to marked needles provided by an authorized plan. Thus, if required to rule on the correct construction of section 80.135 (1) (c), the court would reject defendant’s attempt to transform the proviso of subdivision (1) into an authorization circumventing the limitations of subdivision (c).